UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03301-JHN-AJWx | Date | April 7, 2011 |
|---|---|---|---|
| Title | Syed Naqvi et al v. Citibank NA et al | | |

| Present: The Honorable | JACQUELINE H. NGUYEN | | |
|---|---|---|---|
| Alicia Mamer | Not Reported | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:    Attorneys Present for Defendants:

Not present    Not present

**Proceedings:** ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT   (In Chambers)

On March 11, 2011, Defendants Citibank, N.A. and Citibank (West) F.S.B. (collectively, "Citibank" or "Defendants") filed a Motion for Summary Judgment or, in the Alternative, Summary Adjudication of Claims ("Motion"; docket no. 10). The Court has read and considered the papers filed in this matter and deems the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); Local Rule 7-15. Accordingly, the hearing set for April 11, 2011, is removed from the Court's calendar.[1]

**I. BACKGROUND**

Plaintiffs filed this action in California Superior Court on August 10, 2009. Defendants removed the action to federal court on May 3, 2010, on the basis of diversity jurisdiction.[2]

Plaintiffs are Syed Naqvi on Behalf of the Syed Naqvi Rollover IRA Account ("Naqvi") and Patrick Walsh on Behalf of the Patrick J. Walsh Rollover IRA Account ("Walsh"). Both Naqvi and Walsh were physicians and members of an investment group called Orange County Physicians Investment Network, LLC ("OCPIN"). Through an agreement executed in 2005, OCPIN became the majority stakeholder in Integrated Healthcare Holdings, Inc. ("IHHI"), a corporation that purchased four Orange County hospitals and the affiliated real estate from Tenet Healthcare Corporation. OCPIN accomplished its investment in IHHI by raising funds from the physicians who thereby became its members.

Naqvi made his investment in two portions. Part of his second investment came from Individual Retirement Account ("IRA") funds he held at various institutions. The total amount of IRA funds that

---

[1] In submissions accompanying their Reply, Defendants raise numerous evidentiary objections to declaration testimony submitted by Plaintiffs. Because the Court does not rely on the testimony objected to, it need not rule on Defendants' evidentiary objections.

[2] Because the parties are familiar with the facts of the case, the Court here lays out only a brief summary of the factual context.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03301-JHN-AJWx | Date | April 7, 2011 |
|---|---|---|---|
| Title | Syed Naqvi et al v. Citibank NA et al | | |

Naqvi invested in OCPIN was $140,000. Walsh invested a total of $300,000 in OCPIN, with all funds originating from IRA accounts at two institutions. Both Plaintiffs arranged for the transfer of funds through personnel at Citibank's South Coast Plaza branch, which was close to OCPIN's headquarters.

The crux of the controversy in this action involves the circumstances under which the IRA transfers were accomplished. Plaintiffs allege that the transfers were done as IRA rollovers from the previous institutions' accounts to accounts at Citibank, which then invested the funds in OCPIN, and that Citibank was therefore obligated to ensure that Plaintiffs' IRA investments were suitable and prudent. Defendants assert that neither Plaintiff opened a Citibank IRA and that in fact their IRA funds from other institutions were deposited directly into OCPIN's business checking account at the South Coast Plaza Citibank branch.

The OCPIN investment in IHHI lost value, and Plaintiffs claim a total loss of the IRA funds invested therein. Plaintiffs' Complaint alleges nine causes of action: (1) breach of Citibank's fiduciary duty as an IRA trustee; (2) negligence through a breach of the standard of care of IRA trustees; (3) negligent misrepresentation; (4) intentional misrepresentation; (5) violations of securities laws (Cal. Corp. Code § 25235); (6) failure to train and supervise the Citibank personnel involved; (7) accounting; (8) breach of contract; and (9) tort of another, by which Plaintiffs claim a right to recover attorney fees against Defendants.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 allows a party against whom relief is sought to move for summary judgment on all or part of the claim. Fed. R. Civ. P. 56(a).[3] Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id*. The moving party bears the burden of showing that the motion is properly made and supported. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)); *see also Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000) ("In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its burden of persuasion at trial."). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). If the moving party meets its initial burden, the nonmoving party must then present specific facts that demonstrate the existence of a genuine factual issue that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Where the opposing party is able to

---

[3] Rule 56 was revised effective December 1, 2010. However, the standard for granting summary judgment remains the same as before the revision. *Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, No. 10-30020, 2011 WL 983117, at *3 n.8 (5th Cir. Mar. 10, 2011); *Doe v. City of San Mateo*, No. C 07-05596 SI, 2011 WL 500203, at *2 n.1 (N.D. Cal. Feb. 9, 2011).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03301-JHN-AJWx | Date | April 7, 2011 |
|---|---|---|---|
| Title | Syed Naqvi et al v. Citibank NA et al | | |

identify specific, relevant facts evidencing a genuine issue of material fact, the court must draw all inferences in favor of the opposing party and accordingly deny summary judgment. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the lack of any genuine issue of material fact will necessitate a grant of summary judgment.

### III. DISCUSSION

**A.    Claims for Breach of Contract and Breach of Fiduciary Duty**

At the heart of Defendants' arguments in support of summary judgment is their assertion that Plaintiffs have failed to provide any evidence to show the existence of a written IRA account contract between Citibank and either Plaintiff, that in reality Plaintiffs' IRA funds were deposited directly into OCPIN's Citibank account, and that on this basis, Citibank owed Plaintiffs no duties under a contract or as an IRA trustee. (*See, e.g.*, Mem. of P. & A. ("Mem.") 4, 15, 18.)

The Court disagrees with Defendants' assertion that "there is no evidence that a contract was ever entered into with Citibank." (Mem. 15.) In fact, some evidence submitted by Defendants suggests that Plaintiffs may have formed IRA contracts with Citibank. Plaintiffs' evidence submitted in opposition to the Motion also tends to show the existence of such contracts, though the Court agrees that Plaintiffs' failure to produce the written contracts significantly weakens their case.

For example, Defendants make much of the fact that Walsh produced only one form, a "Citibank IRA Transfer and Direct Rollover Form" ("IRA Rollover Form"). (Decl. of Haroon Amini Ex. 4.) Defendants contend that this form is not a contract establishing an IRA and that the form itself demonstrates that a separate Citibank IRA Application is required to open a Citibank IRA account. (Mem. 14.) Defendants cite to Walsh's deposition, claiming that "Walsh readily admits that he never" filled out that separate application. (*Id.*) The evidence, however, is not so clear-cut. The form itself also contains, above Walsh's signature, the language, "I have completed an application for the IRA named above." Moreover, Walsh's deposition and that of his wife, Anna Walsh, both indicate that a separate IRA application may have been completed.[4] When Walsh was asked, "Did you fill out a Citibank IRA application on August 1, 2005?" he answered that he did not. (Dep. of Patrick Walsh 50:16–18.) This statement does not clearly say that Walsh never submitted such an application—it merely establishes that he did not himself fill one out on that particular day. Similarly, when shown a Citibank IRA application form and asked, "Do you know if you ever filled one of those out?" Walsh answered, "No." (*Id.* at 134:21–25.) The answer indicates a lack of knowledge rather than knowledge that Walsh had not filled out the form, as Defendants assert. Though taken as a whole, Walsh's testimony does not appear to support Plaintiffs' position, Anna Walsh's deposition testimony suggests that forms other than the

---

[4] The record indicates that Anna Walsh was directly involved in the process of establishing Walsh's alleged Citibank IRA account.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03301-JHN-AJWx | Date | April 7, 2011 |
|---|---|---|---|
| Title | Syed Naqvi et al v. Citibank NA et al | | |

IRA Rollover Form were completed. According to her testimony, when she visited the Citibank branch on August 1, 2005, an application had already been completed based on information provided to Citibank personnel about the Walshes, and she was provided only one portion of that application—the IRA Rollover Form—which was the portion Walsh needed to sign. (Dep. of Anna Walsh ("A. Walsh Dep.") 102:23–103:2.) Anna Walsh also testified that on August 3, 2005, the day she and Walsh went together to the Citibank branch to finalize the rollover, she saw Walsh sign a form with the words "Citibank IRA application" at the top. (*Id.* at 107:9–12.)

The evidence also shows a factual dispute with respect to Naqvi. Though Defendants assert that Naqvi has never produced any documentary evidence of a written contract with Citibank and that he does not have any such documents in his possession (Mem. 14), Naqvi testified at his deposition that he filled out some forms when he visited the Citibank branch to set up his IRA rollover. (Dep. of Syed Naqvi ("Naqvi Dep.") 77:23–78:22.) Also, in response to Defendants' form interrogatories, Naqvi stated his belief that he executed a form similar to Walsh's IRA Rollover Form and that Citibank has the forms he completed for his IRA application in its possession. (Decl. of Tricia L. Legittino Ex. 6, at 9.) This evidence, though far from compelling, is sufficient to render summary judgment inappropriate.

Because Defendants have not shown that Plaintiffs cannot establish the existence of IRA contracts with Citibank, Defendants have not met their burden on summary judgment as to the breach of contract claim. Moreover, the potential existence of such contracts implicates the fiduciary duties owed by an IRA trustee, defeating a central argument raised by Defendants in favor of summary judgment of the claim for breach of fiduciary duty. (Mem. 17; Reply 7.) Additionally, Defendants did not meet their burden of showing the scope or limits of the fiduciary duty that would apply to Citibank if the fact-finder determines that IRA contracts were indeed formed. *See Brown v. Cal. Pension Admins. & Consultants, Inc.*, 45 Cal. App. 4th 333, 337–38 (1996) (holding, in a case involving the duties of a bank acting as an IRA trustee, that "express provisions in the documents governing the business relationship between the parties limited the duties of the trustee"). For this reason, like the breach of contract claim, summary judgment cannot be granted on the breach of fiduciary duty claim.

**B.  Claims Based on Misrepresentations**

Plaintiffs' misrepresentation-based claims must also survive summary judgment. Defendants argue that these claims fail because there is no evidence of either misrepresentations or reliance. (Mem. 22.) The alleged misrepresentations fall into two categories: (1) whether Plaintiffs' IRA funds were being rolled over into Citibank IRA accounts (*see, e.g.*, Compl. ¶¶ 33–34, 89, 96); and (2) whether OCPIN was a good investment for an IRA account (*see, e.g.*, *id.* ¶¶ 35–37, 89). Plaintiffs' evidence, including that discussed above, establishes a factual issue as to whether Citibank represented that it was opening IRA rollover accounts for Plaintiffs. As to the propriety of investments in OCPIN, Defendants assert that at his deposition, Naqvi did not recall Citibank personnel telling him OCPIN was a good investment. (Mem. 22.) Naqvi's deposition testimony does include his statement that no Citibank personnel told him "in those words" that OCPIN was a good investment. (Naqvi Dep. 90:1–3.) In his testimony Naqvi also

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03301-JHN-AJWx | Date | April 7, 2011 |
|---|---|---|---|
| Title | Syed Naqvi et al v. Citibank NA et al | | |

stated his belief that Citibank personnel misled him into investing in OCPIN by accepting his IRA funds and taking on the role of an IRA trustee. (*Id.* at 107:21–108:19.) Similarly, the record includes evidence from Anna Walsh's deposition regarding representations made to her and Walsh regarding the safety and strength of the OCPIN investment. (*See, e.g.*, A. Walsh Dep. 82:10–25; 131:14-20; 133:2–8.)

Regarding Plaintiffs' reliance, Defendants assert that the evidence shows Plaintiffs had decided to invest in OCPIN before they spoke with Citibank personnel. (Mem. 22–23.) Though Naqvi testified at his deposition that he had already decided to invest in OCPIN (Naqvi Dep. 89:18–20), the record also shows that Naqvi in fact had already invested in OCPIN; the deposition testimony does not refer specifically to his decision to invest his IRA funds. That deposition also contains some evidence indicating that Naqvi may have relied on Citibank personnel in making the investment of his IRA funds. (*See, e.g.*, *id.* at 93:8–16.) The evidence regarding Walsh similarly suggests that he and his wife may have relied on Citibank personnel in reaching their investment decision.[5] (*See, e.g.*, A. Walsh Dep. 121:12–122:11; 122:23–123:2.)

**C.     Claim for Violations of Securities Laws**

Defendants argue, in part, that Plaintiffs' claim for violations of California securities laws fails because of a lack of evidence that Citibank took on the role of an investment advisor, as required by California Corporations Code sections 25235(a) and (b). (Mem. 24.) The Court agrees that Plaintiffs have not presented evidence establishing Citibank was an investment advisor as defined under the California Corporations Code. Section 25009 defines an investment advisor as

> any person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing or selling securities, or who, for compensation and as a part of a regular business, publishes analyses or reports concerning securities.

Cal. Corp. Code § 25009(a). The statute specifically excludes banks from the definition. *Id.* To the extent Plaintiffs seek to argue that Citibank personnel are investment advisors subject to section 25235, that argument would fail, because even viewing the evidence in the light most favorable to Plaintiffs, the personnel with whom they interacted primarily sought to assist them with opening IRA accounts. Any advice given regarding OCPIN was secondary to this main purpose for the consultation with Plaintiffs. In other words, these employees did not hold themselves out as "engaging in the business of advising others" regarding investments. Neither is there evidence that they "publishe[d] analyses or reports concerning securities." Because neither Citibank nor its employees are investment advisors as defined

---

[5] Walsh appears to have faxed an executed OCPIN Membership Interest Purchase Agreement to Richard Carpe—a C.P.A. who was employed by OCPIN to maintain its books and records—on July 29, 2005, based on the fax date at the top of the pages of that document. (Dep. of Richard Carpe 11:1–25; Ex. 7.) However, the Court disagrees with Defendants' contention that Walsh was contractually bound to the investment as of that day, as the document was effective August 2, not July 29. (*Id.*)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03301-JHN-AJWx | Date | April 7, 2011 |
|---|---|---|---|
| Title | Syed Naqvi et al v. Citibank NA et al | | |

by the California securities laws, the claim for violations of securities laws fails as a matter of law. Therefore, the Court grants summary judgment in favor of Defendants as to this claim.

### D.     Claims for Negligence, Failure to Train, and Accounting

Defendants' argument regarding the negligence claim focuses on the lack of a common-law duty of care under the circumstances of this case. (Mem. 21; Reply 9.) This argument depends on a conclusion that no IRA accounts were established, which the Court finds unsupported by the evidence before it at this time. The same is true for Defendants' arguments regarding Plaintiffs' claims for failure to train and supervise and for accounting: the Court has previously discussed and rejected Defendants' arguments.

### E.     Claim for "Tort of Another"

Defendants argue that Plaintiffs' claim based on the "tort of another" doctrine should be summarily adjudicated because this doctrine does not apply to the present circumstances. (Mem. 25–26.) Defendants note that the mere fact that two Citibank entities have been named does not allow Plaintiffs to use this doctrine to entitle them to an award of attorney fees. (*Id.*) The Court agrees. The "tort of another" doctrine allows a plaintiff to recover attorney fees when the plaintiff must bring an action against a party because of the negligence of a third party. *Elec. Elec. Control, Inc. v. L.A. Unified Sch. Dist.*, 126 Cal. App. 4th 601, 616 (2005). However, the doctrine does not allow recovery of attorney fees in the case of joint tortfeasors. *Id.* at 617. Here, to the extent that Defendants are separate actors—given that they are affiliated business entities—their liability is based on the same conduct, and the "tort of another" doctrine does not apply. Moreover, Plaintiffs failed to raise an argument in opposition to summary judgment as to this claim. Therefore, the Court grants summary judgment as to Plaintiffs' ninth cause of action for tort of another.

### F.     Tort Claims Generally

Defendants additionally argue that all of Plaintiffs' tort claims are barred under California precedents that do not allow Plaintiffs to assert claims under tort theories if the claims are based on an alleged breach of contract. (Mem. 15–16.) The Court disagrees with Defendants' characterization of the case law. In *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503 (1994), the California Supreme Court held that "[c]onduct amounting to a breach of contract becomes tortious only when it also violates an independent duty arising from principles of tort law." *Id.* at 515. The California Supreme Court made a similar statement in *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (noting that tort damages have been allowed in contract cases when a duty independent of the contract gave rise to tort liability). Plaintiffs' tort claims are based on such a duty, and allowing these claims to go forward does not contravene California Supreme Court precedent.

### G.     Statutes of Limitations

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03301-JHN-AJWx | Date | April 7, 2011 |
|---|---|---|---|
| Title | Syed Naqvi et al v. Citibank NA et al | | |

Defendants also seek summary judgment as to Naqvi on statute of limitations grounds. (Mem. 26–27.) They argue that Plaintiffs' suit was filed more than four years after Naqvi knew OCPIN was not a safe investment—contrary to the alleged representations by Citibank—based on Naqvi's review of a Private Placement Memorandum ("PPM") prepared by OCPIN's counsel in February 2005.[6] (*Id.* at 27.) The PPM at issue is dated February 16, 2005, and includes a lengthy discussion of risk factors related to an investment in OCPIN. (Decl of Dr. Anil V. Shah ("Shah Decl.") Ex. 5, at 1, 7–20.) According to Defendants, through his review of the PPM, Naqvi "clearly knew all of the risk factors associated with an investment in OCPIN by February 2005." (Mem. 27.) Defendants cite to portions of Naqvi's deposition in support of the assertion that Naqvi admitted reviewing the PPM, agreed with its contents, and signed the PPM in February 2005 as a member of OCPIN. (*Id.*) It is true that Naqvi's deposition testimony indicates that he signed and agreed with the contents of the PPM, and that when asked when he began to recognize that OCPIN was a high-risk investment, he said "[w]hen probably this PPM came out." (Naqvi Dep. 56:12–16; 57:13–19.) However, Plaintiffs have presented clarifying evidence indicating that at his deposition, Naqvi misunderstood the scope of what he had signed, which was in reality only OCPIN's operating agreement, attached as an appendix at the end of the PPM. (Shah Decl. Ex. 5, at App. 3.) In his declaration in opposition to the Motion, Naqvi explains that when he was presented with the PPM at his deposition, Naqvi "mistakenly assumed that because [the PPM] bore my signature I was obligated to its terms" but later realized that he had read only the pages on which his initials or signature appeared, which did not include the PPM itself. (Decl. of Syed Naqvi ¶ 48.) The Court finds the evidence consistent with Naqvi's explanation: in particular, the fact that the operating agreement appears to have been signed on or about January 5, 2005, more than a month before the PPM was issued. (Shah Decl. Ex. 5, at App. 3.) Moreover, in context Naqvi's statement regarding when he began to believe OCPIN was a high-risk investment does not unequivocally show that he read the PPM when it came out. On the basis of the evidence before the Court, therefore, Defendants have not established that it is entitled to summary judgment as to Naqvi because his claims are time-barred.[7]

---

[6] Defendants assert that all causes of action in the Complaint are subject to limitations periods of four years or less. (Mem. 27 n.10.) Because the Court rejects Defendants' argument that Naqvi's claims are time-barred, it need not address the accuracy of Defendants' assertion.

[7] In their Reply, Defendants also point to the OCPIN Subscription Agreement that Naqvi executed in November 2004 (Shah Decl. Ex. 3), which Defendants claim sets forth that OCPIN securities "are speculative investments which involve a high degree of risk of loss." (Reply 14.) The Court does not address this argument for two reasons: first, Defendants raised the argument regarding the Subscription Agreement only in their Reply, depriving Plaintiffs of the opportunity to respond; second, Defendants cite to the ten-page, single-spaced Subscription Agreement in general without identifying the location of the quoted language. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring a party to cite to "particular parts of materials in the record").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:10-cv-03301-JHN-AJWx | Date | April 7, 2011 |
|---|---|---|---|
| Title | Syed Naqvi et al v. Citibank NA et al | | |

### IV.  CONCLUSION

Defendants' Motion is GRANTED as to Plaintiffs' fifth cause of action for violations of securities laws and ninth cause of action for tort of another and is otherwise DENIED.

IT IS SO ORDERED.

|  | : | N/A |
|---|---|---|
| Initials of Preparer | AM | |